UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANCISCA MORALEZ,<br><br>          Plaintiff,<br><br>     v.<br><br>WHOLE FOODS MARKET CALIFORNIA, INC.,<br><br>          Defendant. | Case No. 14-cv-05022-EMC<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**<br><br>Docket No. 28 |

## I.   INTRODUCTION

On November 13, 2014, Plaintiff Francisca Moralez filed the instant action against Defendant Whole Foods Market California, Inc. Docket No. 1. Plaintiff filed a Second Amended Complaint on July 23, 2015, for which the Court granted retroactive leave for Plaintiff to file. Docket No. 23 (Second Amended Complaint) (SAC). Pending before the Court is Defendant's motion to dismiss the Second Amended Complaint. It was previously determined that a decision without oral argument was appropriate per Civil Local rule 7-1(b). Docket No. 37.

For the reasons set forth below, the Court **GRANTS** Defendant's motion to dismiss.

## II.   BACKGROUND

This complaint arises out of a series of visits by Plaintiff to a store owned and operated by Defendant in Walnut Creek, California. As necessary background, Plaintiff self-identifies as a "physically handicapped person" under the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. § 12102(2)(A). SAC at ¶ 8. Due to her disability, Plaintiff cannot walk on her own and moves with the assistance of a motorized wheelchair. *Id.* Plaintiff also identifies as half Mexican-American and half American Indian. *Id.* at ¶ 9.

Plaintiff began to frequently shop at Whole Foods, enjoying the type of groceries offered.

*Id.* at ¶¶ 11-13. However, Plaintiff was troubled by the failure of Defendant to remove certain merchandise from the service counter that Plaintiff believed existed for the primary purpose of being useful to disabled persons (like herself) in a wheelchair. *Id.* at ¶ 14. After many alleged confrontations with numerous staff members and managers about moving the merchandise, Plaintiff ultimately had an unpleasant confrontation with several employees on July 22, 2013. *Id.* at ¶¶ 15-24. In the wake of this confrontation, Plaintiff began to shop at a different Whole Foods store. *Id.* at ¶ 25.

On March 25, 2014, Plaintiff returned to the store in Walnut Creek. *Id.* at ¶ 26. She shopped for "around 20 minutes" before going to the service counter to check out. *Id.* However, when Plaintiff put her groceries on the service counter, an employee placed a sign in front of her items indicating that the register was closed. *Id.* Plaintiff looked up to see two Walnut Creek police officers approaching her. *Id.* One of the police officers informed Plaintiff that "she was trespassing" and the officer "could arrest her." *Id.* at ¶ 27. Plaintiff alleges she was "obviously scared, humiliated[,] and horrified." *Id.*

An employee then informed Plaintiff that she was trespassing, did not allow Plaintiff to complete her purchase, and informed Plaintiff that she was "barred from every Whole Foods in the United States of America." *Id.* at ¶ 28.

Plaintiff "immediately panicked and was virtually paralyzed with fear because she [could not] walk or stand and the though[t] of being arrested frightened [her] which caused [her] severe mental anguish." *Id.* at ¶ 29. Plaintiff asserts that Defendant's conduct was "inappropriate and hostile and served no reasonable purpose but to injure [Plaintiff's] person and humiliate her in public." *Id.* at ¶ 30. Plaintiff further alleges that she was never previously informed that she was barred from every Whole Foods in the country, and feels that the expulsion is "not justified." *Id.* Finally, Plaintiff emphasizes that on each of her prior visits, she was met with "significant physical barriers in that there were no accessible areas for her to check out." *Id.* at ¶ 31. Based on these events, Plaintiff now brings the instant suit, alleging: (1) intentional infliction of emotional distress, (2) general negligence, (3) violations of Title II of the Civil Rights Act of 1964, and (4) violations of California's Unruh Civil Rights Act.

2

### III. DISCUSSION

Defendant moves for a dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6). Rule 12(b)(6) allows for dismissal based on a failure to state a claim for relief. A motion to dismiss based on this rule essentially challenges the legal sufficiency of the claims alleged. *See Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). In considering a Rule 12(b)(6) motion, a court must take all allegations of material fact as true and construe them in the light most favorable to the nonmoving party, although "conclusory allegations of law and unwarranted inferences are insufficient to avoid a Rule 12(b)(6) dismissal." *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). While "a complaint need not contain detailed factual allegations . . . it must plead 'enough facts to state a claim of relief that is plausible on its face.'" *Weber v. Dep't of Veterans Affairs*, 521 F.3d 1061, 1065 (9th Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Twombly*, 550 U.S. at 556. However, "[t]he plausibility standard is not akin to a 'probability requirement,' but it asks for more than sheer possibility that a defendant acted unlawfully." *Iqbal*, 556 U.S. at 678.

A.   Racial Discrimination

Defendant makes two arguments why Plaintiff's Civil Rights Act claim fails. Mot. at 5-6. First, although the Second Amended Complaint notes that Plaintiff is a member of a protected racial minority, the remaining facts make it clear that the basis for the alleged conflict with Defendant is Defendant's failure to remedy a perceived disability accommodation. *See* SAC at ¶¶ 13-17, 20-24. Plaintiff pleads no facts that, even if taken as true, give any indication that any negative treatment of Plaintiff was based on her ethnic or racial background. Rather, all of the alleged mistreatment was due to Defendant's failure to remedy what Plaintiff believed was an ADA violation, and Defendant's response to Plaintiff's frequent complaints. She alleges no specific non-conclusory facts from which a plausible claim of race discrimination is stated.

Plaintiff's argument to the contrary is unavailing. With no citation to any facts in the Second Amended Complaint, Plaintiff repeatedly claims that the discrimination was on the basis

3

1  of "Plaintiff's physical disability, gender, race[,] and sexual preference." Opp. at 5. Plaintiff also
2  asserts that "Defendant would have acted differently if Plaintiff were white and/or male," but
3  again provides no factual basis for this claim. *Id.* at 10. In the complaint, Plaintiff makes no
4  specific allegations with respect to gender or sexual preference, and assertions like "Defendant
5  discriminated because Plaintiff was half Mexican-American and half American Indian" or
6  focusing on how Plaintiff was simply treated differently are merely conclusory allegations with no
7  facts given to suggest that this alleged disparate treatment was in any way due to Plaintiff's race.

8      The reason for this factually-limited claim of racial discrimination is apparent in the
9  parties' stipulation. *See* Docket No. 25 (Stip.) at ¶¶ 4-6. There, the parties agreed that all claims
10 brought under the Americans with Disabilities Act (ADA) were barred by *res judicata*. Plaintiff
11 previously filed a complaint against Defendant based in part on violations of the ADA in March
12 2012. Docket No. 28-1 (Request for Judicial Notice) (RJN).[1] Defendant then filed a motion in
13 that case to dismiss the complaint on the grounds that Plaintiff's claims were precluded by an
14 earlier class action settlement, of which Plaintiff was a member. RJN, Exh. 2 at 1. Judge Breyer
15 agreed and granted the motion on the basis of *res judicata*. RJN, Exh. 2 at 6. Accordingly, the
16 parties in the instant case stipulated to allow a Second Amended Complaint to be filed so that the
17 preclusion-barred claims for violations of the ADA could be removed.

18     It thus seems clear that the primary claim in this case is based on discrimination due to
19 disability, rather than race, which is reflected by the lack of any specific facts that any of
20 Defendant's behavior was due to Plaintiff's race.

---

[1] Defendants request the Court to take judicial notice of: (1) Plaintiff's complaint in *Moralez v. Whole Foods Market California, Inc.*, Case No. 12-cv-1072-CRB, and (2) the district court's decision granting Defendant's motion to dismiss in Case No. 12-cv-1072-CRB. *See* RJN, Exhs. A-B. Under Federal Rule of Evidence 201, "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Thus, the court "may take judicial notice of undisputed matters of public record, including documents on file in federal or state courts." *Harris v. Cnty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012).

    Here, Plaintiff does not dispute the accuracy of the documents, which are all readily verifiable documents filed in California state court. Judicial notice is therefore proper.

4

In addition to an absence of any facts supporting a claim for racial discrimination, Plaintiff has not pled sufficient facts to show that Defendant's Walnut Creek location is a public accommodation, as defined by the statute. As defined in relevant part, a public accommodation is "any restaurant, cafeteria, lunchroom, lunch counter, soda fountain, or other facility principally engaged in selling food for consumption on the premises, including, but not limited to, any such facility located on the premises of any retail establishment; or any gas station[.]" 42 U.S.C. § 2000a(b)(2). It does not include a grocery store, as Defendant is alleged to be. SAC at ¶ 6; *see also Newman v. Piggie Park Enters, Inc.*, 377 F.2d 433, 436 (4th Cir. 1967) ("The sense of this plan of coverage is apparent. Retail stores, food markets, and the like were excluded from the Act for the policy reason that there was little, if any, discrimination in the operation of them. [African-Americans] have long been welcomed as customers in such stores."); *see also Carrington v. Lawson's Milk Co.*, 815 F.2d 702 (6th Cir. 1987) (available at 1987 U.S. App. LEXIS 3064, *5-6) (per curiam) (stating that a convenience food store was not a place of public accommodation because it was "'not a facility principally engaged in selling food for consumption on the premises,' but rather, a place where food products were sold principally for off-premises consumption"); *Jones v. Wal-Mart*, No. 09-cv-0044, 2010 U.S. Dist. LEXIS 9801, at *5 (W.D. La. Jan. 14, 2010) ("Retail stores, food markets and the like are not within the ambit of § 2000a); *Amiri v. Safeway, Inc.*, C.A. No. 98-0176 (TFH), 1999 U.S. Dist. LEXIS 933, at *2-3 (D.D.C. Jan. 26, 1999) (holding that "a grocery store . . . does not fall within the definition of public accommodation").

Plaintiff does allege that at some point she ate a meal at Defendant's Walnut Creek location. SAC at ¶¶ 23-24. However, the ability to purchase food ready-to-eat at a grocery store and to eat it on or near the property does not convert the location into a restaurant or other public accommodation within the meaning of the statute. *E.g.*, *United States v. Baird*, 865 F. Supp. 659, 662-63 (E.D. Cal. 1994), *rev'd on other grounds*, 85 F.3d 450 (9th Cir. 1996) (a 7-Eleven convenience store was not a public accommodation, *i.e.*, principally engaged in selling food for consumption on premises, where store sold food which was ready to eat but had no facilities for consumption of food on premises, such as tables, chairs, booths, stools, or sit-down counters).

5

1  Plaintiff does not otherwise allege that the Walnut Creek store has a café or comparable food area
2  inside it.[2]

3  Accordingly, the claim is dismissed without prejudice. If an amended complaint is filed,
4  there must be sufficient factual allegations made with a sufficient basis to comply with Fed. R.
5  Civ. P. 11 to support a claim of racial discrimination, as well as sufficient factual allegations to
6  allow the Court to determine whether the store at issue falls within the statute's definition of a
7  public accommodation.

B. <u>Retaliation</u>

Defendant argues that Plaintiff is not a member of a protected class under the Unruh Civil Rights Act, and therefore cannot bring a suit for violation thereof. Mot. at 7. The Unruh Civil Rights Act states that:

> All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, medical condition, genetic information, marital status, or sexual orientation are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

Cal. Civil Code § 51(b). Plaintiff alleges that Defendant "retaliated against her because of [Plaintiff's] disability and because [Plaintiff] promoted her civil rights in an action against [Defendant] in the past." SAC at ¶ 60.

The fact that Plaintiff filed a prior suit against Defendant does not make her a member of a protected class. In *Gayer v. Polk Gulch, Inc.*, the plaintiff asserted that he was protected from retaliation under the Unruh Civil Rights Act "as a member of a class of civil rights litigants." 231 Cal. App. 3d 515, 519 (1991). The Court of Appeal disagreed, "conclud[ing] that the Act does not encompass discrimination based on retaliation . . . ." *Id.* The court found that extending the Act's protection to civil rights litigants would "cover discrimination which is neither based on status as a member of a class nor on personal characteristics but is, instead, based on the conduct of an

---

[2] Defendant argues that the store at issue is a grocery store only. Mot. at 6. However, the Court cannot consider such information for purposes of this motion to dismiss when not contained in the complaint.

6

individual." *Id.* at 525.  Thus, the Court of Appeal found that the plaintiff had failed to state a cause of action under the Act. *Id.*; *see also Scripps Clinic v. Superior Court*, 108 Cal. App. 4th 917, 931-35 (2003) (finding that retaliation discrimination against patient litigants did not violate the Unruh Civil Rights Act).

Here, even assuming that Plaintiff was subjected "to disparate treatment, through retaliation" because she had "litigated a prior civil rights case against [Defendant] in the past," this does not give rise to an offense under the Unruh Civil Rights Act.  Insofar as there might be a substantive claim under the ADA or state accessibility laws (as opposed to one based on retaliation against prior litigation activity), such a claim is barred by *res judicata*.  Docket No. 25 (acknowledging that "all [of] Plaintiff's accessibility claims in her [First Amended Complaint] were barred" and that the Second Amended Complaint "dismissed all accessibility related causes of action under both the ADA and state accessibility laws"); RJN, Exh. 2.  Plaintiff cites no other legal basis for a retaliation claim, either in the Second Amended Complaint or her opposition papers.  Because this defect cannot be cured by amendment, the Court denies this claim with prejudice.

C.    Intentional Infliction of Emotional Distress

The Ninth Circuit has recognized that *Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965 (1993) is the controlling California authority on intentional infliction of emotional distress (IIED).  *Avila v. Willits Envtl. Remediation Trust*, 633 F.3d 828, 844 (9th Cir. 2011).  *Potter* sets forth the elements of IIED as follows:

> (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotion distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct. . . . Conduct to be outrageous must be so extreme as to exceed all bounds of that usually tolerated in a civilized community.  The defendant must have engaged in conduct intended to inflict injury or engaged in with the realization that injury will result.

*Potter*, 6 Cal. 4th at 1001 (citations omitted, ellipses in original); *see also Lawler v. Montblanc N. Am., LLC*, 704 F.3d 1235, 1245 (9th Cir. 2013).  *Potter* further clarified that "[i]t is

7

1  not enough that the conduct be intentional and outrageous. It must be conduct *directed at the*
2  *plaintiff*, or occur in the presence of a plaintiff *of whom the defendant is aware.*" *Potter*, 6 Cal. 4th
3  at 1002 (emphasis in original).

4  Plaintiff alleges IIED on the basis of Defendant targeting her "for embarrassment and
5  humiliation" when they permitted her to shop before calling the police to confront her at the busy
6  checkout area so that she would be publically humiliated. SAC at ¶¶ 40, 42. Defendant responds
7  that the police are not employees of Defendant, were not instructed by Defendant to make any
8  particular statement, and no fact in the Second Amended Complaint indicates any discussions by
9  Defendant with the police at all. Mot. at 8-9. Making all reasonable assumptions in favor of the
10 non-moving party, Defendant must have said something to the police or they would not have been
11 there with the impression that Plaintiff was trespassing. Furthermore, the California Supreme
12 Court has recognized that "accusing an innocent customer of felonious conduct and calling in the
13 police could foreseeably lead to a police investigation, escalation of the conflict, and arrest, all of
14 which would cause emotional distress." *Pool v. City of Oakland*, 42 Cal. 3d 1051, 1064 (1986)
15 (rejecting argument that police conduct was an unforeseeable superseding cause where the
16 defendant called the police to investigate counterfeit money claim). Thus, although the threat of
17 arrest was made by the police, it can be reasonably inferred that Defendant instigated the threat of
18 arrest by calling the police to begin with.

19 Second, Defendant argues no conduct alleged in the Second Amended Complaint shows
20 Defendant acted in any way extreme or outrageous. Mot. at 9. Asking somebody to leave a store
21 is likely to make that person feel uncomfortable, insulted, annoyed, oppressed, or otherwise upset,
22 and may have been inappropriate on the facts of this case if Defendant lacked adequate grounds to
23 establish a trespass. However, this does not necessarily rise to the level required for IIED, in
24 which liability is found "'only where the conduct has been so outrageous in character, and so
25 extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as
26 atrocious, and utterly intolerable in a civilized community.'" *Cf. Cochran v. Cochran*, 65 Cal.
27 App. 4th 488, 496 (1998) (quoting Rest. 2d Torts, § 46, com. d, p. 73) (hostile remarks, including
28 threats that defendant would have plaintiff watched and followed wherever they went, would sue

8

any lawyer representing them, and death threats - without any attempt at following through - fell outside the tort of IIED) and *Corales v. Bennett*, 567 F.3d 554, 572 (9th Cir. 2009) (no extreme and outrageous conduct where middle school vice principal harshly upbraided and disciplined 14-year old student who subsequently committed suicide) with *Plotnik v. Meihaus*, 208 Cal. App. 4th 1590, 1611-13 (2012) (suggesting that extreme and outrageous conduct could be found where defendant struck plaintiff's dog with a bat).

Plaintiff argues that permitting her to shop for twenty minutes before having her ejected with the assistance of the police was evidence of intent to cause injury, setting her up to be embarrassed. Yet allowing Plaintiff to shop twenty minutes could as easily have been the time required to contact the police and for them to arrive from elsewhere. But even if the delay of 20 minutes was intended to heighten her embarrassment, embarrassing another person in front of an audience at a crowded store checkout counter does not rise to the *Potter*'s requirement of conduct "so extreme as to exceed all bounds of that usually tolerated in a civilized community." *See Potter*, 6 Cal. 4th at 1001.

Moreover, there are insufficient factual allegations of severe or extreme emotional distress. Plaintiff states that she was "scared, humiliated[,] and horrified," and that she "immediately panicked and was virtually paralyzed with fear because she cannot walk or stand and the though[t] of being arrested frightened [Plaintiff] which caused severe mental anguish." SAC at ¶¶ 27, 29. Yet "severe mental anguish" alone is insufficient for the tort. *See Hughes v. Pair*, 46 Cal. 4th 1035, 1051 (plaintiff's assertions of discomfort, worry, anxiety, upset stomach, concern, and agitation did not rise to the level of "emotional distress of such substantial qua[nti]ty or enduring quality that no reasonable person in civilized society should be expected to endure it" (citation omitted)); *Lawler*, 704 F.3d at 1246 (plaintiff's assertions of anxiety, sleeplessness, upset stomach, and muscle twitches did not rise to the level of severe emotional distress); *cf. Pool*, 42 Cal.3d at 1068 (upholding jury verdict for negligent infliction of emotional distress where Plaintiff was arrested in public and subjected to booking procedures, a strip search, and a visual inspection of his rectum, and later testified to suffering lingering effects including higher blood pressure and irregular heartbeat). For this reason too, the claim fails.

1 The Court denies this claim without prejudice. Any amendment must include specific
2 facts demonstrating that the actions taken by Defendant amounted to the extreme level of conduct
3 required (beyond that currently alleged), and caused sufficient distress.

D. <u>Negligence</u>

A claim for negligence requires:

> (1) Defendant's obligation to conform to a certain standard of conduct for the protection of others against unreasonable risks (duty); (2) failure to conform to that standard (breach of the duty); (3) a reasonably close connection between the defendant's conduct and resulting injuries (proximate cause); and (4) actual loss (damages).

*Corales v. Bennett*, 567 F.3d 554, 572 (9th Cir. 2009) (quoting *McGarry v. Sax*, 158 Cal. App. 4th 983, 994 (2008)).

Here, Plaintiff pleads and Defendant concedes that Defendant owed a duty to Plaintiff. *See* SAC at ¶ 47; Mot. at 11. However, the precise nature of the duty for a commercial proprietor is to "maintain land in their possession and control in a reasonably safe condition" which duty includes taking "reasonable steps to secure common areas against foreseeable criminal acts of third parties that are likely to occur in the absence of such precautionary measures." *See Delgado v. Trax Bar & Grill*, 36 Cal. 4th 224, 237 (2005). Plaintiff has cited no case law holding that the proprietor's duty extends to protecting the emotional well-being of a customer who is refused service and does not suffer an arrest as a result of the proprietor's action. *Cf. Pool*, 42 Cal. 3d at 1056-58, 1062-63 (upholding jury verdict of negligent infliction of emotional distress against store which wrongly informed employees that a bill would be counterfeit if it did not include the motto "In God We Trust," resulting in plaintiff being arrested after tendering a noncounterfeit bill that did not include that motto).

///
///
///
///
///

### IV. CONCLUSION

For the reasons discussed above, the Court grants Defendant's motion to dismiss. Plaintiff's Unruh Civil Rights Act retaliation claim is denied with prejudice. Plaintiff is granted leave to amend with respect to the Civil Rights Act claim, negligence, and IIED claims, and any amended complaint should be filed within 21 days from the date of this order.

This order disposes of Docket No. 28.

IT IS SO ORDERED.

Dated: December 9, 2015

_____
EDWARD M. CHEN
United States District Judge